**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3528

_____

ADAMS POINTE I, L.P.; ADAMS POINTE II, L.P.; BAYBERRY NORTH
ASSOCIATES L.P.; BETTERS REAL ESTATE HOLDINGS, L.P.; JBCO; ADAMS
POINTE III, L.P.; ADAMS POINTE NORTH CONDOMINIUM ASSOCIATION;
ADAMS POINTE MASTER ASSOCIATION, L.P.; COULTER & GRAHAM, L.P.;
MICHAEL AND KATHLEEN BICHLER; and JOHN EVANS, individually and on
behalf of those similarly situated,

Appellants,

v.

TRU-FLEX METAL HOSE CORP.; TRU-FLEX, LLC; and PRO-FLEX LLC,

*****

TRU-FLEX METAL HOSE CORP., TRU-FLEX, LLC, and PRO-FLEX LLC,
Third-Party Plaintiffs,

v.

RIDGE DEVELOPMENT CORP.; RIDGE MANAGEMENT & DEVELOPMENT
CORP.: ADAMS POINTE CONSTRUCTION CORP.; ADAMS POINTE SOUTH
VILLAGE OWNERS ASSOCIATION, L.P.; ADAMS POINTE CONDOMINIUM
ASSOCIATION; WARD CONDOMINIUM ASSOCIATION; WARD
MANUFACTURING, LLC d/b/a WARDFLEX; UNIQUE INDUSTRIAL PRODUCT
COMPANY; PRO-FLEX HOLDINGS, LLC (OF TEXAS),

Third-Party Defendants

_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No. 2-16-cv-00750)
District Court Judge: Cathy Bissoon

_____

Argued on July 8, 2021

(Filed: August 16, 2021)

Before: SHWARTZ, KRAUSE, and RENDELL, *Circuit Judges*.

Rebecca Bell-Stanton [Argued]
Nathan S. Carpenter
Carpenter & Schumacher
2500 Dallas Parkway
Suite 495
Plano, TX 75093
        *Counsel for Appellants*

Daniel R. Bentz, I
Thomas Pie, Jr.        [Argued]
Marks O'Neill O'Brien Doherty & Kelly
707 Grant Street
2600 Gulf Tower
Pittsburgh, PA 15219
        *Counsel for Appellees, Tru-Flex, LLC, and Tru-Flex Metal Hose Corp.*

Adam L. Frankel     [Argued]
Thomas A. Gamache
Daniel J. Offenbach
Leahy Eisenber Fraenkel
33 West Monroe Street
Suite 1100
Chicago, IL 60603

Gina M. Zumpella
Walsh Barnes & Zumpella
2100 Corporate Drive
Suite 300
Wexford, PA 15090
        *Counsel for Appellee, Pro-Flex, LLC*

John J. Hare
Shane Haselbarth
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street
Suite 2300
Philadelphia, PA 19103
        *Counsel for Third-Party Defendant/Appellee Unique Industrial Product, L.P.*

**RENDELL**, *Circuit Judge*.

A putative class of property owners ("Plaintiffs") appeals the denial of class certification for claims brought against Defendants Tru-flex Metal Hose Corp., Tru-Flex, LLC (collectively, "Tru-Flex") and Pro-Flex LLC (collectively, "Defendants"), for damages sustained from allegedly defective yellow-jacketed corrugated stainless-steel tubing ("Pro-Flex® CSST" or "CSST"). For the reasons discussed below, we will affirm.

## I.

Defendants market Pro-Flex® CSST as a safer and more installer-friendly gas delivery mechanism than traditional black iron pipe gas systems. The product consists of a stainless-steel pipe encased in an insulative outer yellow jacket. Plaintiffs allege that power surges from nearby lightning, or potentially a household electrical current, can cause a structure to be electrically energized such that the energy creates a hole in the CSST and can result in fire. Whereas traditional black iron pipes can withstand an energy surge by distributing the charge, yellow-jacketed CSST cannot. Plaintiffs allege that Defendants have actual knowledge that yellow-jacketed CSST is insufficiently insulated to prevent combustion following an electrical surge, but they nonetheless continue to manufacture and distribute it nationwide.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

A class action was brought in 2004 against other manufacturers of yellow-jacketed CSST, in which the plaintiffs alleged that the manufacturers knew that yellow-jacketed CSST was defectively designed and was susceptible to combustion. As a part of the class settlement, the manufacturers represented that bonding and grounding "might mitigate the imminent harm." Pls.' First Am. Compl. ¶ 28. Bonding refers to tying all metal points in the gas system together so that they conduct at the same electrical potential level, thereby preventing an arc between different areas of electrical potential. Grounding involves providing stray electrical current with a path toward the ground.

Plaintiffs allege that, following the 2004 class settlement, bonding and grounding guidelines were included in industry-wide design and installation manuals provided to certified installers for new installations of yellow-jacketed CSST. Plaintiffs allege that these guidelines were included without validating whether bonding and grounding sufficiently mitigated the risk of combustion, and without providing a remedy for prior legacy installations. Plaintiffs claim that Defendants rely on the bonding and grounding instruction manual to mitigate any design defect, but that bonding and grounding do not remedy the defective Pro-Flex® CSST in existing structures nor do they remove the inherent danger of yellow-jacketed CSST. Although other manufacturers have modified the design of their CSST products to incorporate arc-resistant jackets, Defendants have not made any modifications and continue to market and distribute the yellow-jacketed CSST.

According to Plaintiffs, Defendants concede that industry practice requires yellow-jacketed CSST to be sold to and installed by a qualified plumbing professional, in

4

accordance with applicable plumbing codes. However, Plaintiffs allege that Defendants continue to sell Pro-Flex® CSST to "do-it-yourself installers." Pls.' First Am. Compl. ¶ 58.

Plaintiffs own residences in Pennsylvania that are allegedly affected by Pro-Flex® CSST. Plaintiffs claim that they have incurred costs as a result of physical damage, loss in property value, and mitigation efforts. Following a nearby lightning strike in 2015, a condominium unit in the Adams Pointe Community caught fire and experienced significant property damage. According to a third-party fire investigation, Pro-Flex® CSST installed in the condominium unit failed, causing natural gas to release into the unit and ignite. Plaintiffs allege that the Pro-Flex® CSST was inspected and approved by local code officials before the fire.

Plaintiffs include the owners of properties in the Adams Pointe Community, the condominium associations responsible for exterior repairs at Adams Pointe, and the owners of other residential properties in which yellow-jacketed CSST was previously installed but has since been replaced. Plaintiffs allege that the presence of yellow-jacketed CSST has damaged the value of their properties and their ability to sell because home inspectors list the yellow-jacketed CSST as a material defect. Plaintiffs seek a variety of remedies including monetary damages for property damage, replacement pipes, inspection costs, additional safety measures, the diminution in value of their property, and increased insurance costs. They additionally seek injunctive relief to prevent Defendants from selling, marketing, and distributing Pro-Flex® CSST unless they remedy its defect.

5

Plaintiffs sought to certify a class defined as follows:

> Any and all persons and/or entities who own real property in the United States in which yellow-jacket Pro-Flex® CSST manufactured, designed, marketed, or distributed by the named Defendants was installed.

Plaintiffs sought nationwide class certification under Federal Rule of Civil Procedure 23(b)(3) for their claims of (1) breach of implied warranty of merchantability and fitness; (2) strict products liability; and (3) negligence for marketing defect and failure to warn.[1] Plaintiffs also sought certification of a subclass for their claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. In the alternative, Plaintiffs argue that they have met the standards for class certification under Rule 23(b)(2) for injunctive relief and class certification under Rule 23(c)(4) for a liability-only class.

Magistrate Judge Cynthia Reed Eddy filed a Report and Recommendation, which concluded that Plaintiffs failed to satisfy the elements of class certification. The District Court adopted the Report and Recommendation as the Opinion of the Court and denied Plaintiffs' motion for class certification.

---

[1] On appeal, Plaintiffs assert that they sought nationwide certification only for the strict products liability and implied warranty claims. In the First Amended Complaint and the Memorandum in Support of Motion for Class Certification, they sought nationwide certification for the negligence claim as well, so we will consider it as a claim for both the nationwide class and the Pennsylvania-only class.

II.

The District Court had jurisdiction under 28 U.S.C. § 1332(d). We have appellate jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f).[2]

"We review a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 354 (3d Cir. 2013) (internal quotation marks omitted). We review de novo whether the District Court applied the correct legal standard. See id.

III.

Plaintiffs argue that the District Court abused its discretion by concluding that they failed to satisfy any element of Rule 23. Every putative class must satisfy the four requirements of Rule 23(a):

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

---

[2] A class action meets the Article III standing requirements so long as at least one named plaintiff has standing. Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 364 (3d Cir. 2015). Plaintiffs have made the requisite showing here because they allege that they suffered damages in the form of property damages from fire, remediation efforts, property value loss and/or increased insurance premiums.

In re Cmty. Bank of N. Va., 622 F.3d 275, 291 (3d Cir. 2010). The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence. See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 591 (3d Cir. 2012).

Plaintiffs seek certification of a nationwide class or multi-state subclasses under Rule 23(b)(3) or, in the alternative, certification under Rule 23(b)(2) for injunctive relief or Rule 23(c)(4) as a liability-only class. We will address each proposed class in turn.

A.

We note at the outset that the District Court held that Plaintiffs could not satisfy any of the Rule 23(a) and (b) requirements, and that the class was also not ascertainable. We will not address each of these requirements, however, because we conclude that Plaintiffs' class claims fail due to their lack of commonality and Plaintiffs' inability to satisfy the Rule 23(b)(3) requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Plaintiffs argue that the District Court abused its discretion by ignoring the common issues that they identified and by focusing the predominance inquiry on variations in state law. "It is often appropriate to discuss commonality and predominance together because the commonality inquiry is subsumed into the predominance inquiry." Reyes v. Netdeposit, LLC, 802 F.3d 469, 486 (3d Cir. 2015). We will do so here.

Federal Rule of Civil Procedure 23(a)(2) requires "questions of law or fact common to the class." This means "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). Although this bar "is not a high one," we have found commonality

8

lacking where there was no common practice or common harm. See Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382-85 (3d Cir. 2013).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a), requiring more than a common claim." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d Cir. 2008), as amended (Jan. 16, 2009) (cleaned up). Notably, "the presence of individual questions does not *per se* rule out a finding of predominance." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 315 (3d Cir. 1998). Predominance also "does not require that common questions will be answered, on the merits, in favor of the class," Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 371 (3d Cir. 2015) (citation omitted), but it does require that the common issues will generate common answers, Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). The district court "must determine whether the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" Gonzalez v. Corning, 885 F.3d 186, 195 (3d Cir. 2018) (quoting In re Hydrogen Peroxide, 552 F.3d at 311-12). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Id. (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001)). Accordingly, we "examine each element of a legal claim through the prism of Rule 23(b)(3)." Marcus, 687 F.3d at 600 (internal quotation marks omitted).

9

Plaintiffs urge that both commonality and predominance are met here based on the common product and Defendants' common course of conduct in continuing to manufacture, market, and sell the CSST. Plaintiffs identify "susceptibility to perforation," "availability of alternative designs," Defendants' knowledge of alternative designs, and the design's safety for intended use as common issues. Pls.' Reply Br. 15. But this is not a case where the same conduct has given rise to the same harm. Some plaintiffs have experienced physical damage, whereas others allege an economic injury from the diminution in value of their home, repair costs, or increased insurance costs. Some may have no injury or their injury may depend on the condition of the pipes and manner of installation. Each claim will require individualized property assessments and will raise different causation issues. Even plaintiffs with physical damages will need to make different showings of damage based on the particular conditions of their property and the circumstances surrounding the damaging event.

Plaintiffs urge that the efficacy of bonding and grounding and other installation questions are common because if they are ineffective, they will remove possible defenses across the class. But Plaintiffs have not shown that the effectiveness of proper installation can be resolved with "evidence that is common to the class." In re Hydrogen Peroxide, 552 F.3d at 311. Instead, installation questions will rely on individualized assessments such as the product placement at each property, the conduct of each installer, and the effect of local codes. And even if the effectiveness of bonding and grounding is a common question, it certainly does not predominate over these individualized assessments. In sum, Plaintiffs have not shown how the design issues will rely on

10

common evidence that will resolve any of the essential elements of their claims.  See Gonzalez, 885 F.3d at 195.  Certainly common fact issues do not predominate.

Plaintiffs additionally contend that the District Court erred in finding a lack of predominance based on variances in state law.  They argue that they submitted a "trial plan" which "outlin[es] divisibility based on multi-state similarities" and provides a comparison of relevant state laws and jury instructions.  Pls.' Reply Br. 23.  But the exhibits Plaintiffs reference consist only of a chart listing the type of law in each state and patterned jury instructions for the various claims in all fifty states.  They do not set forth a "trial plan."

The District Court concluded that "Plaintiffs have not even attempted to identify the common elements of each of their causes of action, let alone attempt to explain how those elements can be met by common proof."  Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp., No. 2:16-CV-00750-CB, 2020 U.S. Dist. LEXIS 128055 at *9 (W.D. Pa. July 17, 2020).  While Plaintiffs claim that all fifty states have adopted the Uniform Commercial Code ("UCC") § 2-314's implied warranty of merchantability provision, the District Court explained that states vary widely in their application of the provision. States also have varying statutes of limitations and privity requirements for implied warranty claims.  The District Court also noted that strict products liability and negligence causes of action differ among states.

We agree with the District Court that Plaintiffs have failed to show how the Court could "navigate the significant variations in state law."  Id. at *10.  Plaintiffs may overcome predominance obstacles in a nationwide class action where they have shown

11

that the applicable state laws are substantially similar such that they can be grouped together and applied as a unit at trial. See In re Prudential, 148 F.3d at 315. We have recognized that a grouping proposal was manageable where the plaintiffs provided a "series of charts setting forth comprehensive analyses of the various states' laws potentially applicable to their common law claims." Id. Conversely, where plaintiffs "failed to provide a sufficient, or virtually any, analysis describing how the grouped state laws might apply to the facts" of their case, we affirmed the district court's ruling that plaintiffs had failed to meet their predominance burden. Grandalski v. Quest Diagnostics Inc., 767 F.3d 175, 184 (3d Cir. 2014). Here, Plaintiffs have not shown how various "elements of these common law claims are substantially similar and [that] any differences fall into a limited number of predictable patterns." See In re Prudential, 148 F.3d at 315. Their "comparison" sets forth the type of law of each jurisdiction, but provides no analysis of how the elements of the various causes of action in the different jurisdictions compare to each other or could be grouped so as to be manageable at trial. And the patterned jury instructions they provided for the fifty states fail to show how a "jury could be charged in some coherent manner," by reference to these instructions. See Grandalski, 767 F.3d at 183. As in Grandalski, this exhibit is, at best, a "generic assessment" of state laws that is insufficient to meet their burden of showing that grouping is workable. Id. at 184.

Accordingly, we agree with the District Court that Plaintiffs have failed to satisfy their predominance burden. The District Court did not abuse its discretion in denying certification for the nationwide class under Rule 23(b)(3).

12

B.

Plaintiffs urge that the Court disregarded their proposal for multi-state subclasses or a Pennsylvania-only class under Rule 23(b)(3). They argued at the class certification hearing that subclasses could be based on the states that have adopted the UCC without modification and the states that have adopted the Restatement (Second) of Torts §402A (Am. L. Inst. 1995). Plaintiffs further aver that they met their burden for a Pennsylvania-only class because they identified the various elements of their Pennsylvania law claims. Plaintiffs' recitation of the applicable laws of either the multi-state subclasses or the Pennsylvania-only class does not address their burden of showing that they will prove the elements of their claims through common evidence. See In re Hydrogen Peroxide, 552 F.3d at 311. These proposed subclasses will also suffer from the individual causation and damages issues discussed above. We will therefore affirm the District Court's denial of certification for these subclasses.

C.

Plaintiffs argue that the District Court also abused its discretion in denying certification under Rule 23(b)(2) for injunctive relief or Rule 23(c)(4) for a liability-only class. For similar reasons as discussed above, we conclude that the District Court did not abuse its discretion.

Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." Gates v. Rohm & Haas Co., 655 F.3d 255, 264 (3d Cir. 2011) (quoting Wal-Mart Stores, Inc., 564 U.S. at 360-61). "The key to the (b)(2) class is the indivisible nature of the injunctive or

13

declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." See Wal-Mart Stores, Inc., 564 U.S. at 360 (internal quotation marks omitted). Plaintiffs seek primarily individualized monetary relief here. They have not shown how their proposed injunctive relief of enjoining the selling and marketing of Pro-Flex® CSST will remedy their alleged physical and economic injuries. We agree with the District Court that certification under Rule 23(b)(2) is inappropriate.

Plaintiffs additionally contend that even if certification under Rule 23(b)(3) is inappropriate due to a predominance issue, certification under Rule 23(c)(4) is warranted because they have shown common liability issues that will advance the case. We have enumerated several non-exhaustive factors relevant to assessing whether certification under Rule 23(c)(4) is appropriate. These factors include "the type of claim(s) and issue(s) in question," "the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives," "the substantive law underlying the claim(s)," and the "the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues." Gates, 655 F.3d at 273. We have recognized that "certifying a Rule 23(c)(4) class is analytically independent from the predominance inquiry under Rule 23(b)(3), [but] a case may present concerns relevant to both." Gonzalez, 885 F.3d at 202. That is the case here. For the same reasons that Plaintiffs failed to satisfy predominance under Rule 23(b)(3), Plaintiffs have failed to allege a theory of liability for which class-wide treatment is appropriate.

14

## IV.

For the foregoing reasons, we will affirm the District Court's ruling.